UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. _____

WAHL HUNGARIA KFT.,
a foreign corporation,

      Plaintiff,

v.

4G ELECTRONICS GROUP INC.,
a Florida corporation,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, WAHL HUNGARIA KFT., a foreign corporation ("Plaintiff" or "Wahl"), by and through its undersigned counsel, hereby sues Defendant, 4G ELECTRONICS GROUP INC., a Florida corporation ("Defendant or "4G"), and alleges as follows:

### **Nature of the Case**

1.     This action arises out of a purchase order for 30,000 pieces of a microcontroller Plaintiff ordered from Defendant over five months ago, which Defendant has failed to completely fulfill as promised to Plaintiff.

2.     As Defendant has ignored Plaintiff's demand that Defendant remit to Plaintiff the balance of the money Plaintiff advanced to Defendant, 4G, for product that 4G never tendered for delivery, Plaintiff now brings claims against 4G for breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, negligent misrepresentation, and unjust enrichment in the alternative.

## Parties, Jurisdiction, and Venue

3.      Plaintiff, Wahl, is a Hungarian corporation with its principal place of business in Hungary.

4.      Defendant, 4G, is a Florida corporation authorized to conduct business in the State of Florida, with its principal place of business at 10211 W. Sample Rd., Suite 106, Coral Springs, Florida 33065.

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(2), as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and this action is between a Hungarian corporation and a Florida corporation.

6.      This Court has personal jurisdiction over Defendant pursuant to Section 48.193, Florida Statutes, because Defendant:  (i) is a citizen of the State of Florida, (ii) is operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida, (iii) breached a contract within the State of Florida by failing to perform acts required by the contract to be performed in Florida; and (iv) engaged in substantial and not isolated activity within the State of Florida.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district, as it maintains its principal place of business in Coral Springs, Florida, and a substantial portion of the events giving rise to this action occurred in this district.

8.      All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived, or otherwise excused.

**General Allegations**

9.      Wahl manufactures professional and home electric hair clippers and trimmers for global distribution.  To efficiently manufacture its products and ensure the best quality to its customers, Wahl depends on parts sourced from reputable and reliable suppliers.

10.      4G's website, https://www.4g-electronics.com, portrays 4G as a reputable, reliable, "premium" supplier that provides quality electronic components at affordable prices with "exceptional lead times."

11.      One of the electronic components 4G offers for sale on its website is a microcontroller, ATTINY 461V-10SUR (the "Microcontroller").

12.      The Microcontroller is a necessary component for manufacturing certain Wahl products, as the Microcontroller stores the software that manages electronic elements of the products.  For example, it controls motor speed, LED lights, and charging.

13.      In January 2022, Wahl purchased 1,000 pieces of the Microcontroller from 4G, which were delivered to Wahl.

14.      On February 3, 2022, sales representative for 4G, Max Martin ("Mr. Martin"), contacted Wahl's Strategic Purchasing Group Leader, Mate Lipovits ("Mr. Lipovits"), inquiring whether Wahl needed more parts.

15.      On February 4, 2022, Mr. Lipovits confirmed to Mr. Martin that Wahl still had shortages on the Microcontroller, and further advised Mr. Martin, on February 7, 2022, that any quantity of the Microcontroller would be helpful.

16.      On February 15, 2022, Mr. Martin emailed Mr. Lipovits with 4G's offer to sell Wahl 30,000 pieces of the Microcontroller at $3.9337 USD each, based on a delivery time of seven (7) to ten (10) days and net payment due thirty (30) days from invoice.

17.     The following day, on February 16, 2022, Wahl submitted Purchase Order No. 451434502 ("Purchase Order") to 4G for the purchase of 30,000 pieces of the Microcontroller at a price per unit of $3.9337 USD, with a total net value of $118,011.00 and a delivery date of March 2, 2022.  A true and correct copy of the Purchase Order is attached hereto as **Exhibit "A**."

18.     On February 17, 2022, in response to the Purchase Order, 4G provided Wahl with Invoice No. 2598458 (the "Invoice") for 30,000 pieces of the Microcontroller (collectively, the "Product"), at a price per unit of $3.9337, in the total amount of $118,011.00, subject to $88,500.00 (seventy-five (75%) of the total amount) being paid in advance to 4G (the "Advance Payment"), and an estimated shipping date of March 3, 2022. A true and correct copy of the Invoice is attached hereto as **Exhibit "B."**

19.     Wahl, in immediate need of the Product—the urgency of which was made clear in e-mail correspondence to 4G—promptly issued the Advance Payment via credit transfer to 4G on February 18, 2022, and sent 4G proof of the credit transfer that same day.  A true and correct copy of the proof of the credit transfer is attached hereto as **Exhibit "C**."

20.     Accordingly, Wahl adhered to the Purchase Order and Invoice by promptly remitting the required Advance Payment to 4G.

21.     Upon receiving the Advance Payment, on February 18, 2022, Mr. Martin confirmed to Mr. Lipovits that the lead time quoted by 4G for delivery of the Product to Wahl was seven (7) to ten (10) business days.

22.     Nearly a week later, on February 24, 2022, Mr. Lipovits contacted Mr. Martin to receive an update on the delivery of the Product to Wahl.

23.     In response, on February 24, 2022, Mr. Martin advised Mr. Lipovits that 4G was "waiting for [4G's] supplier to ship," but that it expected the Product to be shipped to Wahl by "next week."

24.     Nearly two weeks later, on March 8, 2022, Mr. Lipovits contacted Mr. Martin again to receive a status update on delivery of the Product to Wahl.

25.     In response to Wahl's inquiry, on March 8, 2022, Mr. Martin advised Mr. Lipovits that 4G "just found out that [4G's] supplier pushed out the delivery by 3 weeks." Further, Mr. Martin claimed 4G "purchased th[e] product over 6 months ago, the supplier is an authorized source, they have been fairly reliable but once in a while [4G] do[es] run into a minor delay," which such delay in this instance 4G considered to be minor.

26.     Ten (10) days later, on March 18, 2022, Mr. Lipovits again contacted Mr. Marin at 4G to receive an update on delivery of the Product to Wahl, in response to which Mr. Martin stated he would talk to his purchasing manager and send an update to Mr. Lipovits "immediately."

27.     After not receiving any update from 4G, Mr. Lipovits followed up with Mr. Martin again on March 22, 2022, requesting an update on delivery of the Product to Wahl.

28.     The same day, on March 22, 2022, Mr. Martin provided Mr. Lipovits an update that the Product would be shipped from the supplier on March 29, 2022.

29.     On April 6, 2022, Mr. Martin requested Mr. Lipovits to provide 4G with Wahl's shipping information, but still did not confirm the date on which the Product would be delivered to Wahl.

30.     The next day, on April 7, 2022, Mr. Lipovits sent an email to Mr. Martin requesting 4G to provide Wahl with packaging details for the Product and 4G's office details to

facilitate UPS pick up of the Product from 4G's office; however, Mr. Martin did not respond to Mr. Lipovits's email inquiry.

31.     On April 11, 2022, Mr. Lipovits sent another email to Mr. Martin requesting packaging details from 4G to facilitate UPS pick up of the Product from 4G's office.  Mr. Martin responded that same day advising Mr. Lipovits that the Product was in three (3) boxes ready for shipment at 4G's office in Coral Springs, Florida, each box of which had dimensions of "15 x 15 x 25" and weighed 10 lbs, and that UPS could contact Mr. Martin directly to pick up the packages.

32.     On April 14, 2022, Mr. Lipovits emailed Mr. Martin three (3) UPS labels (tracking numbers 1Z01A1988696772078, 1Z01A1988697249481, 1Z01A1988696552690), to facilitate the shipment of the Product in the three (3) boxes from 4G's office in Coral Springs, Florida to Wahl in Hungary.

33.     Wahl then arranged for UPS to pick up the three (3) boxes on April 14, 2022 from 4G's office in Coral Springs, Florida; however, UPS reported to Wahl that UPS was unable to reach anyone in 4G's office, including Mr. Martin, to pick up the three (3) boxes.

34.     On April 25, 2022, UPS advised Wahl that 4G tendered one (1) box (tracking number 1Z01A1988696772078)—rather than three (3) boxes—to UPS for delivery to Wahl.

35.     The same day, on April 25, 2022, Mr. Lipovits informed Mr. Martin that UPS advised Wahl that only one (1) box had been tendered by 4G to UPS, and requested 4G to follow up with UPS regarding the issue or confirm that 4G only tendered one (1) box, rather than three (3) boxes, to UPS.  Mr. Martin responded that 4G would look into the situation and update Mr. Lipovits.

36.     The next day, on April 26, 2022, Mr. Lipovits followed up with Mr. Martin again requesting Mr. Martin for a status update on whether 4G tendered one (1) box of the Product to UPS rather than three (3) boxes of the Product, and Mr. Martin responded that he was meeting with "shipping and purchasing" regarding the issue and would update Mr. Lipovits "within the hour."

37.     As Mr. Lipovits did not receive an update from Mr. Martin or any other employee or representative of 4G on April 26, 2022 regarding whether 4G had tendered three (3) boxes or simply one (1) box of the Product to UPS, Mr. Lipovits sent follow up emails to Mr. Martin again each business day for the next several days, on April 27, 2022, April 28, 2022, and April 29, 2022; however, neither Mr. Martin nor any other employee or representative of 4G confirmed whether 4G tendered three (3) boxes or simply one (1) box of the Product to UPS..

38.     On May 3, 2022, Mr. Lipovits again emailed Mr. Martin requesting Mr. Martin for information regarding the status of delivery of the Product, to which Mr. Martin responded on May 4, 2022, that 4G's "shipping manager" was contacting UPS.

39.     The next day, on May 5, 2022, Mr. Lipovits sent another follow up email to Mr. Martin to check on the status of the two (2) additional boxes; however, Mr. Lipovits received an automated response that Mr. Martin's email was not working.  Mr. Lipovits then sent an email to 4G's sales email address listed on 4G's website, sales@4g-electronics.com, notifying 4G of the response Mr. Lipovits received from Mr. Martin's email address and further requesting an update on 4G's shipment of the Product to Wahl.

40.     The single box tendered by 4G to UPS arrived to Wahl's delivery destination in Hungary on May 10, 2022, but the box contained only 956 pieces of the Product, well under the 30,000 pieces Wahl ordered from 4G pursuant to the Purchase Order and Invoice. A true and

correct copy of 4G's invoice number 4071520319 and customs clearance documentation reflecting the contents included in the single box delivered to Wahl is attached hereto as **Composite Exhibit "D."**

41.     After receiving the one (1) box containing only 956 pieces of the Product, Mr. Lipovits sent an email on May 17, 2022 to 4G's President, Ruth Gnecco ("Ms. Gnecco"), notifying 4G that Wahl had not received responses from Mr. Martin or 4G's sales email address (sales@4g-electronics.com) regarding Wahl's inquiries concerning the status of delivery of the remaining two (2) boxes of the Product, and requesting Ms. Gnecco to provide Wahl with an update regarding the missing pieces of the Product ordered by Wahl.

42.     Three (3) days later, on May 20, 2022, 4G's President, Ms. Gnecco, responded to Mr. Lipovits's May 17, 2022, stating she would be out of the office until Tuesday, May 24, 2022, but that she would "meet with sales and figure out what the situation is and advise [Mr. Lipovits] shortly thereafter." However, Ms. Gnecco did not follow up with Mr. Lipovits.

43.     Despite Wahl's payment of the Advance Payment to 4G, and 4G's promised delivery time (which was initially estimated for March 3, 2022), 4G failed to adhere to the terms of the Purchase Order and Invoice.

44.     On May 27, 2022, undersigned counsel, on behalf of Wahl, provided a written demand to 4G requesting 4G to provide the shipping details for the balance of the Product or to return the balance of the Advanced Payment to Wahl for the remainder of the Product that was never tendered by 4G to UPS.

45.     On June 1, 2022, 4G's President, Ruth Gnecco, advised undersigned counsel for Wahl that she would "look into the matter" and get back to undersigned counsel for Wahl "within the next couple of days."

46.     After receiving no update from 4G, undersigned counsel for Wahl made yet another attempt on June 8, 2022 to amicably resolve the situation by requesting 4G's President, Ms. Gnecco, to confirm to undersigned counsel for Wahl by June 9, 2022 that 4G would be immediately returning to Wahl the balance of the Advance Payment.

47.     The next day, on June 9, 2022, 4G's President, Ms. Gnecco, responded to undersigned counsel for Wahl indicating that 4G was "waiting on UPS to update [4G] on the situation with the lost package(s)," and that 4G would update undersigned counsel for Wahl once 4G received information from UPS.

48.     On June 9, 2022, for the first time, 4G represented to Wahl that the two (2) remaining boxes of the Product were allegedly lost.

49.     Further, the same day, on June 9, 2022, Mr. Lipovits finally received an email from 4G's sales email address (sales@4g-electronics.com) in response to the May 5, 2022 email he had sent over a month earlier to 4G's sales email address, in which 4G stated that Mr. Martin would call Mr. Lipovits the next morning to discuss the order. Yet, neither Mr. Martin, Ms. Gnecco, nor any other employee or representative of 4G called Mr. Lipovits the next day.

50.     On June 13, 2022, Ms. Gnecco informed undersigned counsel for Wahl via email that 4G spoke with UPS "last week" and was asked by UPS "to re-file a claim for the lost package(s)." Ms. Gnecco further advised undersigned counsel for Wahl that 4G "again" filed a claim with UPS for lost packages.

51.     On June 13, 2022, for the first time, 4G represented to Wahl that 4G had filed a claim with UPS for the two (2) remaining boxes of the Product that 4G alleged were lost.

52.     Due to 4G's continuous delay in the matter, Wahl contacted UPS and received confirmation from UPS that only one (1) package (tracking number 1Z01A1988696772078) was

tendered by 4G into UPS' possession. UPS further confirmed that the other two (2) shipments (tracking numbers 1Z01A1988697249481 and 1Z01A1988696552690), which 4G has alleged were lost, were never put into UPS' possession. A true and correct copy of the June 15, 2022 communication from UPS to Wahl regarding the three (3) tracking numbers at issue is attached hereto as **Exhibit "E**."

53.     On June 13, 2022, Wahl, through undersigned counsel, notified 4G that UPS confirmed it only received one box from 4G, and *yet again* demanded 4G to return to Wahl the balance of the Advance Payment in the amount of $84,739.38 for the Product that was never tendered by 4G to UPS ($88,500 Advance Payment less $3,760.62 for 956 pieces of the Product that were in the one (1) box delivered to Wahl).

54.     On June 20, 2022, Wahl received further confirmation from UPS that UPS only picked up one (1) package from 4G (tracking number tracking number 1Z01A1988696772078). A true and correct copy of the June 20, 2022 communication from UPS to Wahl regarding the three (3) tracking numbers at issue is attached hereto as **Exhibit "F**."

55.     On July 8, 2022, Mr. Martin contacted undersigned counsel regarding the two (2) allegedly lost packages, and 4G's intent to begin shipping the remainder of the Product as soon as July 11, 2022.

56.     On July 13, 2022, Wahl responded that it did not approve the shipment of the Product and, additionally, did not agree to any terms and conditions relating to the purported shipment. Wahl further, again, demanded 4G to return to Wahl the balance of the Advance Payment in the amount of $84,739.38 ($88,500 Advance Payment less $3,760.62 for 956 pieces of the Product Wahl received) by Friday, July 15, 2022 at 5:00 p.m.

57. To date, 4G has been nonresponsive to Wahl's demands for repayment of the balance of the Advance Payment.

58. Due to 4G's actions, it has been necessary for Wahl to engage attorneys to file and prosecute this action, for which Wahl will incur costs, attorneys' fees, as well as other expenses.

## COUNT I—BREACH OF CONTRACT

59. Wahl realleges and incorporates paragraphs 1 through 58 above, as if set forth herein.

60. Wahl and 4G entered into a valid contract reflected by the Purchase Order and Invoice.

61. Pursuant to the Purchase Order and Invoice, Wahl agreed to purchase 30,000 pieces of the Product from 4G for a total purchase price of $118,011.00, seventy-five percent (75%) of which was to be paid by Wahl to 4G in advance of 4G's delivery of the Product.  The remainder of the balance of the purchase price was not to be due to be paid by Wahl to 4G until thirty (30) days from invoice.

62. Pursuant to the Purchase Order and Invoice, 4G agreed to ship 30,0000 pieces of the Product to Wahl, with an estimated shipping date of March 3, 2022.

63. Pursuant to the Purchase Order and Invoice, Wahl remitted the Advance Payment to 4G on February 18, 2022.  *See* **Exhibit C**.

64. Wahl satisfied the conditions under the Purchase Order and Invoice for 4G to ship the Product to Wahl.

65. Over two months after the agreed upon shipping date pursuant to the Purchase Order and Invoice, 4G shipped only 956 pieces of the Product to Wahl, which was 29,044 fewer

pieces than the 30,000 pieces of the Product 4G agreed to ship to Wahl pursuant to the Purchase Order and Invoice.

66.     As 4G did not ship 30,000 pieces of the Product to Wahl, 4G failed to satisfy 4G's obligations under the terms of the Purchase Order and Invoice.

67.     Accordingly, 4G materially breached the terms of the Purchase Order and Invoice by failing to ship the full 30,000 pieces of the Product to Wahl.

68.     As a direct and proximate result of 4G's breach of the Purchase Order and Invoice, Wahl has suffered, and will continue to suffer, damages, including, but not limited to the balance of the Advance Payment in the amount of $84,739.38 paid by Wahl to 4G for the Product that was never tendered by 4G to UPS, and incidental and consequential damages for non-delivery of the Product.

69.     Wahl has fulfilled its obligations under the Purchase Order and Invoice.

WHEREFORE, Plaintiff, Wahl Hungaria Kft., respectfully requests that this Court enter judgment against Defendant, 4G Electronics Group, Inc., awarding Plaintiff damages, including, but not limited to, the recovery of the price paid and damages for the non-delivery of the Product pursuant to Section 672.711(2), Florida Statutes, pre-judgment and post-judgment interest accrued on the award that is available under applicable law, costs, and such other and further relief as this Court deems just and proper.

## COUNT II—VIOLATION OF FLORIDA'S DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT

70.     Wahl realleges and incorporates paragraphs 1 through 58 above, as if set forth herein.

71.     Wahl sues 4G in this count for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. ("FDUTPA"), which was enacted "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

72.     4G was, and is, engaged in a "trade or business" as defined by FDUTPA, § 501.203(8), Fla. Stat., as it advertises and offers goods for sale.

73.     The transaction between Wahl and 4G for the sale of goods is governed by FDUTPA, as 4G operates in Florida, and the nexus of the underlying buying and selling of the goods in this dispute is tied to Florida.

74.     Wahl has standing to sue pursuant to FDUTPA, § 501.203(7), Fla. Stat., as Wahl is a "business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination."

75.     4G has violated FDUTPA by engaging in "unfair or deceptive acts or practices in the conduct of any trade or commerce," § 501.204(1), Fla. Stat., as more particularly described in this Complaint.  Specifically, 4G has violated FDUTPA by:

        a.      Deceptively inducing Wahl into purchasing the Product under the basis of false representations by 4G that the Product was estimated to ship by March 3, 2022;

b.      Making false statements to Wahl on April 11, 2022 that 4G had the Product ready to ship in three (3) boxes; and

c.      Making false statements to Wahl that 4G had shipped 30,000 pieces of the Product to Wahl utilizing UPS when, in fact, 4G only tendered one (1) box to UPS containing 956 pieces of the Product.

76.     As a direct and proximate result of 4G's deceptive and unfair trade practices in violation of FDUTPA, Wahl has incurred substantial and material actual damages in the amount of $84,739.38, which is the balance of the Advance Payment Wahl paid to 4G for the Product that was never tendered by 4G to UPS for delivery to Wahl.

WHEREFORE, Plaintiff, Wahl Hungaria Kft., respectfully requests that this Court enter judgment against Defendant, 4G Electronics Group, Inc., awarding Plaintiff damages, pre-judgment and post-judgment interest accrued on the award that is available under applicable law, attorneys' fees and costs pursuant to § 501.2105(2), Florida Statutes, and such other and further relief as this Court deems just and proper.

## COUNT III—NEGLIGENT MISREPRESENTATION

77.     Wahl realleges and incorporates paragraphs 1 through 58 above, as if set forth herein.

78.     Wahl sues 4G in this count for negligent misrepresentation.

79.     At all pertinent times, 4G knew that Wahl had a shortage of Microcontrollers and was in need of any quantity of the Product.

80.     Mr. Martin, on behalf of 4G, made false representations to Wahl concerning material facts, including:

a.      Falsely representing to Wahl on February 17, 2022 that 30,000 pieces of the Product were estimated to ship by March 3, 2022;

b.      Falsely representing to Wahl on April 11, 2022 that 4G had 30,000 pieces of the Product ready to ship to Wahl in three (3) boxes; and

c.      Falsely representing to Wahl that 4G had shipped 30,000 pieces of the Product to Wahl utilizing UPS.

81.      Mr. Martin, on behalf of 4G, either knew these were misrepresentations at the time they were made, made the misrepresentations without knowledge of their truth or falsity, or should have known that these representations were false.

82.      Mr. Martin, on behalf of 4G, made these misrepresentations to Wahl with the intent that Wahl would rely on the misrepresentations to enter into the Purchase Order and Invoice, remit the Advance Payment to 4G, and continue to wait for the remainder of the Product to be delivered to Wahl.

83.      Wahl justifiably relied on the above false representations by 4G to Wahl's detriment by entering into the Purchase Order and Invoice, remitting the Advance Payment to 4G, and continuing to wait for the remainder of the Product to be delivered to Wahl.

84.      As a direct and proximate result of 4G's false representations to Wahl, Wahl has suffered, and will continue to suffer, damages in an amount to be established at trial.

WHEREFORE, Plaintiff, Wahl Hungaria Kft., respectfully requests that this Court enter judgment against Defendant, 4G Electronics Group, Inc., awarding Plaintiff damages, pre-judgment and post-judgment interest accrued on the award that is available under the applicable law, costs, and such other and further relief as this Court deems just and proper.

## COUNT IV—UNJUST ENRICHMENT (IN THE ALTERNATIVE)

85.     Wahl realleges and incorporates paragraphs 1 through 58 above, as if set forth herein.

86.     This Count for unjust enrichment is pled in the alternative to Wahl's breach of contract claim.

87.     Wahl conferred a benefit on 4G by paying 4G the Advance Payment on February 18, 2022, representing advance payment for 22,500 pieces of the Product out of the 30,0000 pieces of the Product Wahl ordered from 4G.

88.     4G voluntarily accepted and retained the benefit of the Advance Payment for the Product that Wahl ordered from 4G.

89.     4G only tendered 956 pieces of the Product to UPS for delivery to Wahl, which is far fewer than the 22,500 pieces of the Product that Wahl paid 4G in advance with the Advance Payment that was accepted and retained by 4G.

90.     Under these circumstances, equity and good conscience dictate that 4G should not be permitted to retain the benefits conferred by Wahl upon 4G without repaying the value thereof.

91.     Wahl is without an adequate remedy at law to remedy the situation.

WHEREFORE, Plaintiff, Wahl Hungaria Kft., respectfully requests that this Court enter judgment against Defendant, 4G Electronics Group, Inc., awarding Plaintiff damages, pre-judgment and post-judgment interest accrued on the award that is available under the applicable law, costs, and such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Wahl hereby requests a trial by jury on all issues so triable.

Dated: July 15, 2022

Respectfully submitted,

/s/ *Sarah M. DeFranco*
Sarah M. DeFranco (Fla. Bar No. 0889741)
Primary email: sarah.defranco@akerman.com
Secondary email: jill.parnes@akerman.com
Nicole Villamar (Fla. Bar No. 1010639)
Primary email: Nicole.villamar@akerman.com
Secondary email: wendy.gonzalez@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

*Attorneys for Plaintiff, Wahl Hungaria Kft.*